MILLER v. STATE.

Opinion delivered October 6, 1913.

1. CRIMINAL LAW—INDICTMENT—ALLEGATION OF OWNERSHIP.—The allegation of onwership of land is held good where, under Kirby's Digest, § 1913, defendant is charged with having cut a gate on the land of one S., when S. was not the owner of the land, but the fence around said land, he was guilty of trespass as denounced in Kirby's Digest, § 1913. (Page 365.)

2. TRESPASS—CUTTING DOWN GATE.—Where defendant sold land to S., reserving the merchantable timber and the right to cut and remove the same, defendant had the right to go on the land for the one purpose, and when defendant broke down a gate and tore down the fence around said land, he was guilty of trespass as denounced in Kirby's Digest, § 1913. (Page 365.)

Appeal from Greene Circuit Court; *J. F. Gautney,* Judge; affirmed.

*S. R. Simpson,* for appellants.

The court should have sustained appellants' request for a directed verdict of acquittal. Under the evidence, they had possession of the lot where the gate was for three years after the sale of the land. The enclosure was neither the enclosure of Smith nor in his possession, the possession of the mill lot and its fences never having passed from defendant, J. C. Miller. Kirby's Dig., § 1913.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1. The reservation in the deed is not of the *lot,* but only of the mill and timber and the right to remove the same.

The fence around the lot was the real protection for the crop being grown by Smith.

Appellants committed the acts which the statute was enacted to prevent, and the court properly directed a ver-

dict against them. Kirby's Dig., § 1913; 43 Ark. 284-6; 102 Ark. 170-5.

2. Smith, having rented the land from Mrs. Harrelson, was the owner thereof within the meaning of the statute. 52 Ark. 266.

WOOD, J. The appellants were convicted under the provisions of section 1913, of Kirby's Digest, which makes it a misdemeanor "to pull down or break the fence, or leave open the gate of the farm, plantation or other enclosed ground of another."

The appellant, J. C. Miller, sold some land in Greene County to J. B. Smith and Mrs. Harrelson. Miller executed separate deeds to the lands, conveying a certain tract to J. B. Smith and a certain other tract to Mrs. Harrelson, which deed contained the following reservation: "The parties of the first part reserve all the merchantable timber upon the tract of land, and shall have the privilege to cut and remove the same within three years from date. The parties of the first part also reserve the sawmill on said tract of land, and shall have three years to remove the same. It is also expressly stipulated and agreed that the parties of the first part need not deliver possession of the above described property until nine months from this date."

The proof shows, and the appellants concede, that they cut the gate to an enclosure on the land sold by appellant, J. C. Miller, to Mrs. Harrelson. Appellants contend that the lands did not belong to J. B. Smith, and inasmuch as the indictment charged that the enclosed grounds belonged to Smith, that there was a fatal variance between the indictment and the proof, but the undisputed testimony is, that J. B. Smith, at the time of the alleged trespass, had rented the land on which the alleged trespass took place from Mrs. Harrelson. Therefore, for the purpose of this indictment, the enclosed ground was the property of J. B. Smith. Appellants also testified that they had held possession of the mill lot for three years after the date of the deeds, and had possession of it when the gate was cut. They stated that they

had been hauling through the gate all the time, and at the time Smith locked the gate, appellants were hauling with from three to fifteen wagons every day.

Appellants testified that the mill remained on the enclosed lot about eighteen months after the date of the deed. They stated that there was a lot of merchantable timber in the mill lot yet to be cut, and that the mill and boiler were still there; that they did grinding for the public; that during months after the lands were sold, the gates were never shut, but were left open for the public; that appellants were cutting timber in there any time, and went into the enclosure every day for general purposes—everyday work. Appellants went through the lot when they went in the woods.

The proof on the part of the State tended to show that the fence enclosing the land where the mill was located and on which the trespass is alleged to have taken place was the protection for the crop of J. B. Smith which had not yet been harvested, and that leaving open the gate and tearing down the fence was calculated to turn stock in upon Smith's crop. Smith explained to appellants that the inside fence which separated the mill lot from the crop was weak and would not turn stock. Appellants went to the point where Smith had locked up the gate, and J. C. Miller drew his shotgun to prevent Smith or his wife from interfering, while Ben Miller, the son of J. C. cut down the gate. Later Miller hitched his horse to one of the panels of fence and dragged it open, as one of the witnesses testified he said, "for pure hellishness." This, however, was denied by Ben Miller.

The court instructed the jury to return a verdict of guilty against appellants. Appellants duly excepted to the instruction of the court. The jury returned a verdict in accord with the court's instructions. Judgment was entered against appellants for the fine imposed by the jury, and this appeal has been duly prosecuted.

The appellants testified that under their contract, they held the lot as they had before the sale, but this must be taken simply as an expression of the opinion of

the appellants as to their rights under the contract, for when the deeds are examined, it is manifest that the appellants had no right to the possession of the enclosure for any purpose, except for the purpose of cutting and removing the merchantable timber from the tract of land and also the possession of the sawmill and the right to remove the same from the land. But this reservation only gave to appellants the possession of the lot for the specific purposes named in the deed. It was a mere license to use the land for those purposes, and was not a general right of possession for all purposes in contravention of the possession of the owner. As Smith had the land rented when the alleged trespass occurred, the land, for the purpose of this indictment, must be held as belonging to him. The reservation of the merchantable timber and the privilege to cut and remove the same and also the sawmill, with the privilege of removing it within the time specified, did not give appellants a right to the use of the property for all purposes as the absolute owners thereof, and therefore appellants did not have the right to break down the fence, and to cut down and leave open the gates enclosing the premises belonging to Smith. While they had the right of ingress and egress to the enclosure for the purposes specified in the reservation of the deeds, they had no right there for any other purpose, and therefore when they left open and broke down the gate and tore down the fence to the enclosure, as the undisputed evidence shows that they did do, they were guilty of the trespass and misdemeanor denounced by the statute, and the court was correct in so telling the jury as a matter of law. The judgment is therefore affirmed.